*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ANTHONY/BRADFORD/JOHNSON/LEWIS,
Minors.

UNPUBLISHED
August 18, 2022

No. 359786
Wayne Circuit Court
Family Division
LC No. 2004-432296-NA

Before: SAWYER, P.J., and SHAPIRO and REDFORD, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to her minor children, JB, CL, ML, MJ, and CJ, under MCL 712A.19b(3)(c)(*i*) and (j). For the reasons stated in this opinion, we affirm.

## I. BACKGROUND

In August 2018, the Department of Health and Human Services (DHHS) petitioned the trial court to remove seven minor children from respondent's care.[1] According to the petition, respondent had a substantial history with Children's Protective Services (CPS) dating back to 2004. The current petition arose after complaints of physical abuse and neglect of the children and CJ testing positive for THC at birth. The CPS worker who authored the petition visited respondent and her then-partner's[2] home in June 2018 and found unsuitable conditions for the children. The residence was a foreclosed property, the front window was covered by a board, the children did not have beds, and there were no provisions in the home for a newborn. The petition alleged that respondent's substance abuse prevented her from providing adequate care to her children and created a risk of harm to her children.

Respondent made admissions to certain allegations in the petition, including that she did not have suitable housing and that she smoked marijuana while pregnant with CJ. As part of the

---

[1] Two of the children were later dismissed from the petition because the respective fathers either had or later obtained sole legal and physical custody of the child.

[2] At the time, respondent was living with the legal father of MJ and CJ. He has not appealed the termination of his parental rights to those children.

case service plan, respondent was ordered to participate in substance abuse therapy, random drug screens and individual counseling, and to obtain and maintain suitable housing. She also was ordered to complete parenting classes, infant mental health services and regularly visit her children.

A supplemental petition for termination was filed in September 2019 outlining respondent's failure to comply with and benefit from the case service plan. The initial termination hearing was not completed in large part because of the COVID-19 pandemic. In March 2021, DHHS filed an updated supplemental petition for termination.

The termination hearing concluded in September 2021. The trial court found clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (j). The court found that respondent had not complied with her case service plan since the initial removal of her children. Specifically, respondent completed only three of 119 drug screens, and one of her completed drug screens was positive for cocaine. Further, respondent was found to have moved four times during this case, refused to allow a home assessment of her current housing, and recently informed a foster-care worker that her housing was not suitable for children. In addition, respondent only attended 32 of 269 supervised visits and sometimes went months without seeing her children. The court further found by a preponderance of the evidence that it was in the best interests of all the children to terminate respondent's parental rights.

## II. STATUTORY GROUNDS

Respondent argues that the trial court clearly erred by finding clear and convincing evidence to terminate her parental rights under MCL 712A.19b(3)(c)(*i*). We disagree.[3]

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Keillor*, 325 Mich App 80, 85; 923 NW2d 617 (2018) (quotation marks and citation omitted). A trial court may terminate parental rights under MCL 712A.19b(3)(c)(*i*) if it finds by clear and convincing evidence that:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

---

[3] "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "The trial court's factual findings are clearly erroneous if the evidence supports them, but we are definitely and firmly convinced that it made a mistake." *Id*. at 709-710.

"This statutory ground exists when the conditions that brought the children into foster care continue to exist despite the time to make changes and the opportunity to take advantage of a variety of services . . . ." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014) (quotation marks and citation omitted).

Approximately 32 months had passed between the initial disposition in November 2018 and the termination hearing that began in July 2021. The primary conditions that led to respondent's adjudication were unsuitable housing and substance abuse issues.

With regard to housing, respondent had been living with her uncle for about two years at the time of the termination hearing. Respondent did not allow a foster-care worker to assess her residence, despite monthly requests for an evaluation. According to foster-care worker Justin Redder, the reason respondent gave for not allowing the inspection was that her home was not appropriate for reunification. Redder testified that he attempted to assist respondent to find appropriate housing. Specifically, he provided her with a list of several resources in the local area showing available housing, but respondent did not work with him to find housing. Accordingly, it was not clear error for the trial court to find that respondent did not rectify this condition.

There was also sufficient evidence presented that respondent failed to adequately address her substance abuse issues. Redder's testimony revealed that, although respondent was currently treating with a substance abuse therapist at the time of the termination hearing, efforts to have her participate in substance abuse counseling were initially unsuccessful despite multiple referrals for this counseling. Sharman Siberman, respondent's substance abuse and domestic violence counselor, testified that respondent was addressing substance abuse and domestic violence issues in individual therapy and that her marijuana use was because of chronic ankle pain. However, as of the termination hearing, respondent had completed only three drug screens out of 119 screens that were offered. The results of the three drug screens that respondent did complete were all positive for THC, and one was positive for cocaine, which the trial court found especially concerning.

Other barriers to reunification included respondent's parenting skills. Although respondent completed parenting classes, she was not compliant with visitations after these classes were completed, and therefore was unable to show whether she benefited from the parenting classes. Respondent was regularly scheduled to visit with the children, but her visitation record was poor, attending only 32 of 269 possible visits. Respondent did not complete the court-ordered infant mental health services.

In sum, the trial court did not clearly err by finding that the conditions that led to the adjudication—including unsuitable housing and substance abuse issues—continued to exist at the time of the termination hearing. Further, the trial court did not clearly err by finding that there was no reasonable likelihood that the conditions will be rectified within a reasonable time considering the children's ages and the amount of time that respondent had to comply and benefit from the case service plan.

Because only one statutory ground for termination is needed, we decline to address respondent's argument that the trial court erred by terminating her parental rights under MCL 712A.19b(3)(j).

### III. BEST INTERESTS

We also conclude that the trial court did not clearly err when it determined that termination of respondent's parental rights was in the children's best interests.[4]

"To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App at 713. (quotation marks omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714. "[T]he trial court has a duty to decide the best interests of each child individually." *In re Olive/Metts Minors*, 297 Mich App 35, 42; 823 NW2d 144 (2012) (citation omitted). However, the trial court is not required to make explicit findings regarding best interests as to each child where the factual findings would be redundant. *In re White*, 303 Mich App at 716.

Respondent and her sister both testified that respondent had a close bond with her children. The trial court considered respondent's bond with the children, but was concerned by respondent's failure to consistently visit them, and the corresponding effect on the parent-child bond. Again, respondent attended only 32 of 269 supervised visits and sometimes went months without seeing her children. Redder testified that respondent's failure to consistently visit or provide for her children physically or emotionally was difficult on them. Respondent never progressed to unsupervised visits with her children because her visits were infrequent and she was noncompliant with drug screens.

The trial court considered that relative placement weighs against termination of parental rights, *In re Olive/Metts Minors*, 297 Mich App at 42, and a potential guardianship. Nonetheless, the court determined that the young children needed permanency and stability, and that this could be best achieved through adoption. All of the children were doing well in their relative placements, and all of the placements were willing to adopt the children. Respondent had nearly three years to comply and benefit from the case service plan and failed to do so. Given this, the trial court did not clearly err by declining to give respondent more time to plan for the children and instead determining that termination of her parental rights was in the children's best interests.

Affirmed.

/s/ David H. Sawyer
/s/ Douglas B. Shapiro
/s/ James Robert Redford

---

[4] We review "for clear error the trial court's determination regarding the children's best interests." *In re White*, 303 Mich App at 713.